UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DENZELL WATTS                                                                                    PLAINTIFF

V.                                                                 CIVIL ACTION NO. 3:18-CV-879-DPJ-FKB

WARREN COUNTY,                                                                                 DEFENDANTS
MISSISSIPPI, AND MARTIN
PACE, IN HIS OFFICIAL
CAPACITY AS SHERIFF OF
WARREN COUNTY, MISSISSIPPI

ORDER

Plaintiff Denzell Watts was allegedly attacked while being held as a pretrial detainee in Warren County, Mississippi. He therefore sued the county and its sheriff Martin Pace. Defendants have filed two motions seeking judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Watts's federal and state-law claims against them. For the following reasons, both motions [7, 9] are granted, but Watts will be given an opportunity to seek leave to amend as to the federal claims.

I.   Facts and Procedural History

On December 24, 2017, Watts "entered the Warren County Detention Center [('WCDC')] for an alleged criminal offense." Am. Compl. [2] ¶ 8. While he was being held as a pretrial detainee at the WCDC, Watts "was violently attacked and assaulted by several inmates." *Id.* ¶ 11. Watts avers, upon information and belief, that the WCDC "has a history of numerous disturbances that have occurred in the common area where" he was assaulted, as well as "a history of being understaffed, overcrowded and routinely failing to provide adequate inmate supervision." *Id.* ¶ 15.

On December 21, 2018, Watts sued Warren County and Sheriff Pace in his official capacity. In the Amended Complaint, he asserts claims for violations of his Fourth and Fourteenth Amendment rights under § 1983, as well as state-law claims for negligence; negligence per se; gross negligence; negligent and intentional infliction of emotional distress; reckless disregard for his rights and safety; breach of fiduciary duty; respondeat superior; negligent hiring, retention, supervision, training, and/or control; assault; battery; and res ispa loquitor. Am. Compl. [2]. Defendants answered [5] and filed two motions under Rule 12(c) for judgment on the pleadings—one aimed at the federal claims, and the other aimed at the state-law claims.

II. Standard

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

III.     Analysis

    A.     Federal Claims

It is difficult to list the federal claims Watts pursues. Throughout his Amended Complaint, he asserts in different ways that Defendants allowed the attack to occur and thereby violated "a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of life without due process of law; and c) the right not to be deprived of liberty without due process of law." Am. Compl. [2] ¶¶ 27, 35, 42. He also references Title VII of the Civil Rights Act of 1964. *Id.* ¶ 5.

As Defendants observe, there are no facts suggesting a Title VII employment claim, a Fourth Amendment search-and-seizure claim, or a claim based on the deprivation of life—Watts is still alive. Watts makes no effort to address these claims in his response to Defendants' motion, so if Watts intended to plead those meritless claims, he has abandoned them. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment."). Claims based on Title VII, the Fourth Amendment, and deprivation of life are therefore dismissed as to both Defendants.[1]

It appears then that Watts pursues claims under 42 U.S.C. § 1983 for failure to protect and failure to train and/or supervise. As to the first, Watts says Defendants violated his due-

---

[1] Because Watts sued Pace in his official capacity only, the claims against him are in reality claims against the County, so the same analysis applies to both Defendants. *See Hafer v. Melo*, 502 U.S. 21, 23–27 (1992) (explaining that official-capacity claims against an officer are claims against the governmental entity).

3

process rights by allowing him "to be brutally assaulted by other inmates while at the detention center." Pl.'s Mem. [13] at 1.

Defendants first argue that Watts failed to state a failure-to-protect claim because there has been no loss of life or liberty. *See* Defs.' Reply [17] at 4. The problem with this argument is that Watts has identified a cognizable constitutional theory. As the Supreme Court stated in *DeShaney v. Winnebago County Department of Social Services*,

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by . . . the Due Process Clause.

489 U.S. 189, 200 (1989). Thus, despite his flawed description of the legal theories, Watts enjoyed a Fourteenth Amendment due-process right to be protected from violence. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *see also Silva v. Moses*, 542 F. App'x 308, 311 (5th Cir. 2013) (holding that "prison officials have a constitutional duty to protect prisoners from violence by other inmates").[2]

So the question is whether Watts adequately pleaded a failure-to-protect claim. Such claims are generally analyzed either as claims based on episodic acts or conditions of confinement. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019) (citing *Hare*, 74 F.3d at 644). Here, neither party expressly addresses this distinction in their briefs, but they both reference the deliberate-indifference standard that applies in episodic-acts cases. *Id.* at 634. This would be the correct analysis. *Id.* at 632 (holding that in episodic-act cases, "'the complained-of

---

[2] "Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (reversing decision to dismiss suit because plaintiff premised claim on constitutional amendments rather than § 1983).

4

harm is a particular act or omission of one or more officials,' and 'an actor usually is interposed between the detainee and the municipality'" (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc))).

To establish municipal liability for an episodic act, "a plaintiff must show '(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'" *Id.* at 634 (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)). To meet the first element, Watts must show that he was held under "conditions posing a substantial risk of serious harm and that the prison officials acted with deliberate indifference to [his] safety." *Johnson*, 385 F.3d at 524 (internal quotation marks and citation omitted).

This is a difficult standard to meet. To show that a municipal employee acted with subjective deliberate indifference, Watts must allege that "the official had subjective knowledge of a substantial risk of serious harm." *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 526 (5th Cir. 1999) (quoting *Hare*, 74 F.3d at 650). An allegation that a prison official "knew of previous violent incidents [but] declined to take unspecified protective measures to prevent future attacks . . . does not show that any risk to [the plaintiff] was clear to the officers." *Silva*, 542 F. App'x at 311. Instead, to establish deliberate indifference based on knowledge of previous incidents, "[t]he plaintiff must generally demonstrate . . . a pattern of similar violations." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001).

The Amended Complaint fails to allege facts suggesting a plausible claim for deliberate indifference. While Watts makes reference, "upon information and belief" to other "disturbances that have occurred in the common area where [he] was violently attacked and assaulted," there is

5

no allegation as to any specific instances or that a pattern of similar incidents occurred. Am. Compl. [2] ¶ 15. Nor are there any "particular facts establishing that [any prison officials] knew that [Watts's cellmates] presented a risk of serious harm and purposefully exposed [Watts] to that risk." *Mosley v. Anderson*, 503 F. App'x 272, 274 (5th Cir. 2012). Stated simply, Watts's conclusory allegations, filled with legal buzzwords but without any factual support, do not suffice. So the motion for judgment on the pleadings is granted as to the failure-to-protect claim.

Watts will, however, be given the opportunity to seek leave to amend. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) ("[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing. . . . Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.").

Watts also seeks to hold Defendants liable under § 1983 for failing to adequately train and supervise employees.

> The failure to provide proper training may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury. In resolving the issue of a city's liability, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. A plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy.

*Valle v. City of Hous.*, 613 F.3d 536, 544 (5th Cir. 2010) (internal quotation marks and citations omitted).

As noted before, "deliberate indifference is a stringent standard of fault, requiring [allegations] that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). And in the failure to train context, the plaintiff

6

must show that "in light of the duties assigned to specific officers of employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

*Valle*, 613 F.3d at 547 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The Supreme Court discussed the standard in *Connick*:

> Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution. A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities . . . .
>
> A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick*, 563 U.S. at 61–62 (internal quotation marks and citations omitted).

Watts has not alleged sufficient facts to support municipal liability for failure to train or supervise under these exacting standards. Watts mentions the "failure to train or supervise" formulation three times in the Amended Complaint: Watts alleges that "[t]he failure of all Defendants to adequately train and supervise their employees, agents and security personnel amount[s] to deliberate indifference to the rights of the Plaintiff to be free from unreasonable seizures under the Fourth and Fourteenth Amendments," Am. Compl. [2] ¶ 34; that Defendants negligently "fail[ed] to supervise the conduct of [the] inmates and security personnel," *id.* ¶ 49; and that

> [a]s a direct and proximate consequence of . . . Defendants' failure to properly develop, implement and otherwise devise a policy of adequate employee and/or security training and/or supervision . . . Plaintiff was deprived of certain constitutional rights . . . which, if properly trained and supervised, every employee and/or security personnel within [Defendants'] employ . . . would have known of the illegality . . . and Plaintiff's injuries . . . would not have happened,

*id.* ¶ 83. Watts then goes beyond these averments in his response to Defendants' motion, asserting that unnamed "officers were unsupervised when they allowed inmates to become unruly and enter other inmates jail cells where the incidents occurred." Pl.s' Mem. [13] at 7–8.

These assertions fail to state a claim. Quoting legal standards is insufficient after *Iqbal/Twombly*; negligence fails to state a claim under § 1983; Watts never avers any specific previous incidents, much less a pattern; and he does not explain how the alleged lack of supervision by additional officers led to his assault. So judgment on the pleadings will be granted as to this claim as well, without prejudice to Watts's ability to file a motion for leave to amend.

B. State-Law Claims

The Mississippi Tort Claims Act ("MTCA") "provides the exclusive remedy for civil claims against governmental entities."[3] *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 136 (Miss. 2013). Yet Watts cannot assert an MTCA claim because he was an inmate when the attack occurred.

Under section 11-46-9(1)(m) of the Mississippi Code, "[a] governmental entity . . . shall not be liable for any claim . . . [o]f any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution." Miss.

---

[3] Under state law, the claims against Watts in his official capacity are claims against the County. *See City of Jackson v. Harris*, 44 So. 3d 927, 928 n.1 (Miss. 2010) ("The 'City of Jackson' includes the municipality of Jackson, the Jackson Police Department, and Officer Jeffrey Middleton in his official capacity.").

Code Ann. § 11-46-9(1)(m). The Mississippi Supreme Court has consistently held that the term "inmate" in this section should be interpreted "broadly, to include pretrial detainees." *Hinds Cty. v. Burton*, 187 So. 3d 1016, 1024 (Miss. 2016); *see also Love v. Sunflower Cty. Sheriff's Dep't*, 860 So. 2d 797, 800 (Miss. 2003) (same).

Faced with this authority, Watts "petitions this Court to adopt the arguments as advanced by Justice McRae in his Dissent opinion in *Love*." Pl.'s Mem. [15] at 6; *see Love*, 860 So. 2d at 804 (McRae, J., dissenting) (arguing that "a post-arrest detainee who has not been charged with an offense" should not be treated as an inmate under MTCA's inmate exception). But a dissent does not reflect Mississippi law as articulated by the "final decisions of the [Mississippi] Supreme Court." *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000). And under Mississippi law, Watts's state-law claims are barred by the MTCA's inmate exception. Defendants' motion as to the state-law claims is therefore granted, and those claims are dismissed with prejudice.

IV. Conclusion

All arguments were considered; those not addressed would not have changed the outcome. For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings as to Federal Claims [7] and their Motion for Judgment on the Pleadings as to State-Law Claims [9] are granted. Watts shall have 14 days within which to file a properly supported motion to amend as to the § 1983 failure-to-protect and failure-to-train-and-supervise claims. Under Local Rule 15, the motion must attach the proposed amended complaint. If Watts does not so move, this case will be finally dismissed with no further notice.

**SO ORDERED AND ADJUDGED** this the 14th day of June, 2019.

                                       s/ *Daniel P. Jordan III*
                                       CHIEF UNITED STATES DISTRICT JUDGE