UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DENZELL WATTS                                                                           PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:18-CV-879-DPJ-FKB

WARREN COUNTY, MISSISSIPPI,                                                    DEFENDANT

ORDER

Several inmates at the Warren County Jail viciously beat and severely injured Plaintiff Denzell Watts shortly after his arrest on assault charges. Watts sued Warren County, Mississippi, under 42 U.S.C. § 1983, and the County now seeks summary judgment. Mot. [78]. For the following reasons, its motion is granted as to the failure-to-train-or-supervise claim, and the conditions-of-confinement claim but otherwise denied.

I.      Facts and Procedural History

On Christmas day 2017, Watts was arrested in Warren County for aggravated assault. Two days later officers booked him into the Warren County Jail and assigned him to D-Block. According to Watts, the booking officer told him D-Block was the "Thunder Zone," Watts Dep. [78-1] at 17, and that "a lot of violence happens in that zone," *id.* at 56. Shortly after arriving in D-Block, Watts "got hit" and was knocked unconscious. *Id.* at 24. He was then brutally assaulted by several inmates. *See* Video [82-2].

Between 2:30 p.m. and approximately 4:00 p.m., the jail received four calls (at a minimum) stating that an assault in D-Block was being broadcast on Snapchat. G. Williams Dep. [78-4] at 27–28, 33. Officer Gwyndolyn Williams took the calls, and after the first one alerted Officer Kevin Calvin. *Id.* at 29. Calvin was the only officer on duty to cover the 65 inmates on the second floor. *Id.* Calvin responded and checked D-Block by looking through the

window at the end of the block and asking if there was a problem.  Calvin Aff. [78-5] ¶ 6.  Satisfied by the response from the inmates, he left.  After that initial visit, the jail received additional calls stating that an inmate was being attacked.  G. Williams Dep. [78-4] at 30.  Williams again alerted Calvin around 3:40 p.m.  Calvin Aff. [78-5] ¶ 6.  But no one checked D-Block again until between 4:15 and 4:20 p.m.—two hours after the first call and around 40 minutes after Calvin was again told an assault was ongoing.  White Dep. [82-8] at 41.  Once officers found Watts, he was immediately removed from D-Block and given medical care, including a trip to the emergency room.[1]

Watts filed this § 1983 lawsuit on December 21, 2018.  His Second Amended Complaint asserts four claims against Warren County and Sheriff Martin Pace in his official capacity:  an episodic-act failure-to-protect claim; a conditions-of-confinement failure-to-protect claim; an inadequate-medical-care claim; and a failure-to-train-or-supervise claim.  The official-capacity claim was dismissed by agreement, and Warren County later moved for summary judgment on all remaining claims.  Its motion has been fully briefed, and the Court has personal and subject-matter jurisdiction.

II.   Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

---

[1] The witnesses' testimony regarding the timeline is confusing and conflicts, but the Court must view the facts in the light most favorable to the non-movant, Watts.

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

Finally, "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Oliver v. Holmes County*, No. 3:12-CV-683-DPJ-FKB, 2013 WL 4039392, at *6 n.5 (S.D. Miss. Aug. 7, 2013) (denying in part defendant's motion for summary judgment).

III.   Analysis

Watts seeks compensation from Warren County under § 1983 for violating his Fourteenth Amendment rights as a pretrial detainee.  Specifically, he claims that the County failed to adequately train or supervise its officers, failed to protect him from other inmates, and failed to provide adequate medical care.

Section 1983 provides a claim against any "person" who, "under color of" state law, deprives another of his or her constitutional rights.  42 U.S.C. § 1983.  A municipality like Warren County is considered a "person" subject to § 1983 liability, but only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Municipalities are not subject to vicarious liability under § 1983 for the acts of their employees and officers.  *Id.* at 692.  Thus, municipal liability under § 1983 requires proof of 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

A.   Abandoned Claim

Watts never addressed Warren County's arguments regarding the failure-to-train-or-supervise claim, so Defendant's motion is granted as to that claim.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment.").

B.   Failure-to-Protect Claim

"Pretrial detainees have a constitutional right to . . . protection from harm during their confinement."  *Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008).  A court addressing a

constitutional claim brought by a pretrial detainee "begin[s] by deciding whether to classify the 'challenge as an attack on a "condition of confinement" or as an "episodic act or omission."'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)).  Conditions-of-confinement cases "include such claims as 'where a detainee complains of the number of bunks in a cell or his television or mail privileges.'" *Id.* (quoting *Scott*, 114 F.3d at 53).  Episodic-act cases "occur[] 'where the complained-of harm is a particular act or omission of one or more officials.'" *Id.* (quoting *Scott*, 114 F.3d at 53).

Watts argues that this case can be considered as both a conditions-of-confinement and an episodic-act case.  He says that "the lack of adequate medical care to Mr. Watts, and his overall subjection to the brutal assault, was an unconstitutional jail condition that amounted to punishment in itself."  Pl.'s Mem. [83] at 18.  But "the actual *harm* of which []he complains" is the assault he says Warren County failed to protect him from—"an episodic event . . . allegedly caused or permitted by the . . . general conditions" at the detention center.  *Scott*, 114 F.3d at 53.  Watts "did not suffer from the mere existence of the" allegedly unconstitutional condition.  *Id.*; *see Cadena v. El Paso County*, 946 F.3d 717, 727 (5th Cir. 2020) ("[A] condition may take the form of 'a rule,' a 'restriction,' 'an identifiable intended condition or practice,' or 'acts or omissions' by a jail official that are 'sufficiently extended or pervasive.'" (quoting *Estate of Henson v. Whichita County*, 795 F.3d 456, 468 (5th Cir. 2015))).  He has not demonstrated an unconstitutional condition of confinement.  *See Hare v. City of Corinth*, 74 F.3d 633, 644–45 (5th Cir. 1996) (en banc).

Instead, Watts's allegations invoke the episodic-act framework for failure-to-protect claims.  "To establish municipal liability in an episodic-act case, a plaintiff must show '(1) that

5

the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'" *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir.) (quoting *Brumfield*, 551 F.3d at 331), *cert. denied*, 140 S. Ct. 651 (2019).

Warren County's arguments regarding these elements are not frivolous, but they are better suited for trial. To begin, Watts "must establish that an official acted with *subjective* deliberate indifference." *Hare*, 74 F.3d at 649 n.4.

> A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health or safety" and disregards that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 . . . (1994). . . . [A] prison official "knows of" an excessive risk only if (1) he is aware of facts from which he could infer "that a substantial risk of serious harm exists" and (2) he in fact "draw[s] the inference." *Id.* In other words, in order to be deliberately indifferent, a prison official must be subjectively aware of the risk.

*Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). "[D]eliberate indifference entails something more than mere negligence, [but] it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836; *see also Garza*, 922 F.3d at 634–36 (explaining standards).

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence" or "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Here, Warren County says the Court must find—as a matter of law—that the attack resulted from mere negligence. But to prevail, it must show that "no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hosps. of Dall., Inc.*, 478 F.3d 255, 260 (5th Cir. 2007).

Warren County has not made that showing. For starters, there is no dispute that Watts had a right to protection as a pretrial detainee yet was brutally beaten. A reasonable juror could find that his resulting injuries resulted from subjective deliberate indifference based on some or all of the following facts:

- Officer Gwyndolyn Williams received a call at 2:30 p.m., notifying the jail that an inmate was being beaten on livestream. G. Williams Dep. [78-4] at 27–28. She appropriately notified Officer Calvin, who was the lone officer responsible for D-Block and the other pods on the jail's second floor. *Id.* at 29; *see* Pugh Dep. [82-10] at 58.

- When the call came in, Officer Gwyndolyn Williams also discovered that the video camera monitoring D-Block was obscured preventing any images. G. Williams Dep. [82-6] at 31. Yet the facts suggest that the camera was not restored before Watts was finally removed from the block almost two hours later.

- Officer Calvin responded to the initial call by looking through the window of the door to D-Block and asking the inmates whether there was a problem. Calvin Aff. [78-5] ¶ 6. But because of the jail's design, an officer cannot fully see what is happening when he looks through that window, making it "impossible to adequately monitor inmates." Pace Dep. [82-5] at 28. "A jailer has to walk down those halls to see any other inmates." *Id.* Calvin should have been aware of this limitation, but he was satisfied when none of the inmates he saw through the window appeared hurt and the inmates denied assaulting anyone. Calvin Aff. [78-5] ¶ 6.

- The case for finding deliberate indifference grew stronger when Gwyndolyn Williams received three additional phone calls after Calvin's inspection. G. Williams Dep. [78-4] at 33. Significantly, the 3:40 p.m. call reported that "someone *is* being jumped in cell D Bock." *Id.* at 38 (emphasis added). This suggests that the beating continued after Calvin initially looked through the D-Block window.

- Gwyndolyn Williams told Calvin about the 3:40 p.m. call. Calvin Aff. [78-5] ¶ 6; G. Williams Dep. [78-4] at 38. And despite multiple calls reporting an on-going beating, Calvin did not immediately return to D-Block and instead waited for other officers to start their shift at 4:00 p.m., 20 minutes later. Calvin Aff. [78-5] ¶ 6.

- When Officers Terrell Williams and Darnell White reported for the 4:00 p.m. shift, they were told about the calls. According to White, they inspected D-Block around 4:15 or 4:20 p.m., almost two hours after the first call and about 35 or 40 minutes after Calvin was again asked to check a reported assault. White Dep. [82-8] at 41.

- There were only a handful of officers in the jail that afternoon, and it appears that they all knew the jail was receiving multiple calls of an ongoing attack. Yet for almost two hours—and with no access to video—there was no follow up.[2]

While Watts has created a jury question on subjective deliberate indifference, that is not alone sufficient to establish municipal liability. Watts must still show "that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 F.3d at 634.

"Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. But a policy may also be evidenced by custom." *Piotrowski*, 237 F.3d at 579. Custom would include "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)); *see also Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005) ("An act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997))).

"Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster*, 735 F.2d at 841. "The objective deliberate indifference standard 'considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the [pretrial detainee's] rights.'" *Brumfield*, 551 F.3d at 331 (quoting *Lawson v. Dallas County*, 286 F.3d 257, 264 (5th

---

[2] Warren County will dispute some of these facts, but as stated, the Court must view them in the light most favorable to the non-movant.

Cir. 2002)).  Deliberate indifference may therefore "be inferred . . . from a pattern of constitutional violations." *Garza*, 922 F.3d at 637.

Here, Sheriff Pace was an outspoken advocate for improving the Warren County Jail in relevant ways.  His comments were published in the local paper, and he made his thoughts known to the Board of Supervisors.  Pace Dep. [82-5] at 13.  Moreover, there were issues at the jail known to Sheriff Pace and the other officers that were causally related to the alleged failure to stop the beating.  Some or all the following facts create a jury question on municipal liability for failure to protect:

- This was not the first physical altercation involving inmates at the Warren County Jail.  Officer Terrell Williams testified that he knew of six to seven in the three years before Watts was assaulted, though he worked a normally quiet shift.  T. Williams Dep. [82-9] at 39–40.  Other officers agreed that altercations happened.  *See* G. Williams Dep. [78-4] at 46; Pugh Dep. [82-10] at 58–59.  Defendant describes that history as infrequent, but the jury should decide whether it reflects a pattern.

- There is evidence officers knew D-Block was dangerous, because they allegedly referred to it as the "Thunder Zone," Watts Dep. [78-1] at 17, and told Watts during his booking that "a lot of violence happens in that zone," *id.* at 56.

- Jail administrator Linda Pugh testified that there was only one officer assigned to the 65 inmates detained on the second floor of the jail the day Watts was beaten, which was the standard staffing ratio.  Pugh Dep. [82-10] at 58.  While Warren County says the jail was not overcrowded, D-Block was one inmate short of maximum capacity.  *Id.* at 52–53.

- Although cameras existed to enhance monitoring, it was well known that inmates would disable them.  Pace Dep. [82-5] at 47; G. Williams Dep. [78-4] at 21–22.  This was typical during altercations and occurred in this instance.  G. Williams Dep. [78-4] at 21–22; T. Williams Dep. [82-9] at 31–32.

- The Warren County Jail fails to meet the Mississippi Department of Corrections "minimum requirements for safety, security, and space."  Pace Dep. [82-5] at 30.

- Most notably, Sheriff Pace was quoted in the local paper—and confirmed during his testimony—that "[t]he main problem is an outdated jail . . . and the linear cell design.  When jailers look through the window of a cell door all they see is a long hallway with each room lined up on the sides of a hall.  A jailer has to walk down those halls to see any other inmates."  *Id.* at 28.  He concluded, "It's impossible to adequately monitor inmates in this kind of design."  *Id.*

While not every fact might ultimately prove true or support a finding of objective deliberate indifference, a reasonable juror could find that Sheriff Pace and the Board of Supervisors possessed actual—or in some cases constructive—knowledge of these facts and that they reflect the County's policies or customs. *Brumfield*, 551 F.3d at 331.

Finally, there is sufficient evidence of a causal relationship between the County's policies and customs and Watts's injuries. As one example, Sheriff Pace testified that it is "impossible to adequately monitor inmates in this kind of design." Pace Dep. [82-5] at 28. He concluded, "[H]ad a guard been able to see this at its inception, then, yes, there - - de-escalation could have occurred more effectively." *Id.* at 58. The assault against Watts supports Sheriff Pace's concerns. Officer Calvin was the only officer assigned to the second floor; the video camera was blocked, as was often the case; under County policy, Calvin could not enter the block by himself;[3] he looked through the window, but that was limited for the reasons Sheriff Pace mentioned; the attack continued after Calvin's first check; and the assault was not discovered for about two hours after it allegedly began. The totality of circumstances would allow a jury to find that county policy or custom was the "moving force" behind the alleged violation of Watts's constitutional rights. *Piotrowski*, 237 F.3d at 578.

C.    Inadequate Medical Care

Watts says he was "denied medical attention even after the guards were made aware of a prisoner assault." 2d Am. Compl. [30-1] ¶ 49. And he argues that he "was subjected to an unacceptably long delay in receiving adequate medical treatment." Pl.'s Mem. [83] at 19. There is no question Watts received immediate and adequate medical attention once officers found and

---

[3] White Dep. [78-14] at 27–28.

removed him from D-Block. The question is whether a delay in receiving that medical care violated Watts's constitutional rights.

"The Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care." *Estate of Henson v. Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011) (quoting *Hare*, 74 F.3d at 650). As with his failure-to-protect claim, Watts must "establish that [jail] official(s) acted with subjective deliberate indifference." *Baughman v. Hickman*, 935 F.3d 302, 307 (5th Cir. 2019) (quoting *Olabisiomotosho*, 185 F.3d at 526).[4]

> For an episodic act claim relying on an alleged denial or delay of medical care, [Watts] can show deliberate indifference by demonstrating that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."

*Id.* (quoting *Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018)).

"A medical need is serious if it 'is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required.'" *Stewart v. Guzman*, 555 F. App'x 425, 431 (5th Cir. 2014) (quoting *Lewis v. Evans*, 440 F. App'x 263, 264 (5th Cir. 2011)). Finally, to establish a Fourteenth Amendment claim based on a delay in medical care, Watts must show that the delay itself "result[ed] in substantial harm." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Mendoza v. Lynaugh*, 989 F.2d 299, 310 (5th Cir. 1992)). "Pain suffered during the delay may constitute sufficient harm." *Eugene v. Deville*, 791 F. App'x 484, 485 (5th Cir. 2020) (quoting *Easter*, 467 F.3d at 464–65).

---

[4] "The proper analysis of [deliberate-indifference] claims is the same [for pretrial detainees and convicted prisoners], as our 'Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners.'" *Baughman*, 935 F.3d at 306 (quoting *Garza*, 922 F.3d at 634).

11

Though Watts never requested medical care that officials denied, there is at least a fact question whether Calvin knew an inmate needed medical care and failed to provide it when he initially checked D-Block.  And, viewing the evidence in the light most favorable to Watts, he suffered a second attack after Calvin did his first cursory check.  That second attack—made possible by the delay in medical care—undoubtedly caused Watts pain and satisfies the causation requirement.  *Eugene*, 791 F. App'x at 485.  And for the same reasons as to the failure-to-protect claim, Watts has created a jury question as to municipal liability on the delay-in-medical-care claim.  Finally, even if Watts's medical claim falls short under Rule 56, the failure-to-protect claim is moving forward, and in this case, "the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

IV.   Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Warren County's Motion for Summary Judgment [78] is granted as to the failure-to-train-or-supervise claim and the condition-of-confinement claim; it is otherwise denied.  The parties are instructed to contact the magistrate judge to set the matter for a settlement conference and then contact Courtroom Deputy Shone Powell to set it for pretrial conference to occur after the settlement conference.

**SO ORDERED AND ADJUDGED** this the 15th day of June, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE